Robert J Vanden Bos OSB #78100
VANDEN BOS & CHAPMAN, LLP
319 S.W. Washington, Suite 520
Portland, Oregon 97204
TELEPHONE: (503) 241-4869
FAX: (503) 241-3731

    Of Attorneys for Debtor-in-Possession


IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. 14-30772-tmb11 |
| | ) | |
| Invest n Retire, LLC, | ) | DEBTOR'S |
| | ) | DISCLOSURE STATEMENT |
| | ) | (Dated: 07/31/14) |
| Debtor-In-Possession. | ) | |

**TABLE OF CONTENTS**

1. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. DEFINITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3. OFFICIAL UNSECURED CREDITORS COMMITTEE. . . . . . . . . . . . . . . . . . . . . . . . 3

4. DESCRIPTION OF THE DEBTOR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    4.1 Debtor's Organization. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    4.2 Debtor's Business and History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5. FINANCIAL HISTORY -- PRE-PETITION AND POST-PETITION. . . . . . . . . . . . . . . 5
    5.1 Pre-Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    5.2 Post-Petition Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6. MANAGEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7. LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    7.1 Pre-Petition Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    7.2    **Post-Petition Litigation**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**8.  AFFILIATES AND INSIDERS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**9.  ASSETS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**10.  LIABILITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**11.  SUMMARY OF THE PLAN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    11.1    **Secured Creditors**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    11.2    **Priority Creditors**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    11.3    **Unsecured Creditors**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    11.4    **Unclassified Creditors**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**12.  ADMINISTRATIVE EXPENSES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**13.  IMPLEMENTATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    13.1    **Effective Date**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    13.2    **Termination of Debtor-in-Possession**. . . . . . . . . . . . . . . . . . . . 14
    13.3    **Revesting**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    13.4    **Source of Funds for Operating Expenses**. . . . . . . . . . . . . . . . . 14
    13.5    **Sale of all or Substantially All of Debtor's Assets to Fund Plan Payments**
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    13.6    **Retention of Avoidance Claims**. . . . . . . . . . . . . . . . . . . . . . . . . 16
    13.7    **Retention of Third-Party Claims**. . . . . . . . . . . . . . . . . . . . . . . . 17
    13.8    **Fees Payable Under 28 U.S.C. § 1930**. . . . . . . . . . . . . . . . . . . 17
    13.9    **Continuation of Retiree Benefits**. . . . . . . . . . . . . . . . . . . . . . . . 17
    13.10  **Prepayment**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    13.11  **Amended Charter**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    13.12  **No Attorney Fees**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    13.13  **No Interest**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**14.  LEASES AND EXECUTORY CONTRACTS**. . . . . . . . . . . . . . . . . . . . . 18
    14.1    **Leases and Executory Contracts Assumed**. . . . . . . . . . . . . . . . 18
    14.2    **Leases and Executory Contracts Rejected**. . . . . . . . . . . . . . . . 19

**15.  RISKS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**16.  TAX CONSEQUENCES TO DEBTOR**. . . . . . . . . . . . . . . . . . . . . . . . . 20

**17.  DEFAULT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**18.  MODIFICATION OF THE PLAN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**19.  ALTERNATIVES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**20. CONFIRMATION OF THE PLAN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    20.1  **Best Interest of Creditors Test**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    20.2  **Fair and Equitable Test.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    20.3  **Voting Procedures.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    20.4  **Hearing on Confirmation**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    20.5  **Effect of Confirmation of the Plan.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

### LIST OF EXHIBITS

**Exhibit 1 -** **Debtor's List of Equity Members**
**Exhibit 2 -** **Debtor's Projected Confirmation Balance Sheet**
**Exhibit 3 -** **Debtor's Liquidation Analysis**
**Exhibit 4 -** **Debtor's Income and Expense Projections / Debtor's Assumptions**
        **Underlying Debtor's Income and Expense Projections and Scheduled**
        **Plan Payments**
**Exhibit 5 -** **Summary of Claims of All Creditors**
**Exhibit 6 -** **Ballot for Accepting or Rejecting Debtor's Plan**

# 1.  INTRODUCTION

On February 18, 2014, Invest n Retire, LLC ("Debtor") filed a voluntary petition ("Petition") for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon.

The purpose of this Disclosure Statement is to provide the holders of Claims against Debtor with adequate information about the Debtor and the Plan to make an informed judgment about the merits of approving the Plan.  The Disclosure Statement describes the various transactions contemplated under the Plan and includes information about how and when different Claims will be paid.  You are encouraged to read the Plan, and if you have questions about its impact on your legal rights you should consult an attorney.

 Factual information contained in this Disclosure Statement is the representation of the Debtor only and not of any of its attorneys, accountants, or other professionals.  The information has not been independently investigated by the Court.

The only representations that are authorized by the Debtor concerning itself, the value of its assets, the extent of its liabilities, or any other facts material to the proposed Plan are the representations contained in this Disclosure Statement.  No representations concerning the Plan or the Debtor other than those set forth in this Disclosure Statement are authorized by the Debtor.  Any representations or inducements concerning the Plan which are other than as contained in this Disclosure Statement should not be relied upon and should be reported to the Debtor for referral to the bankruptcy court for appropriate action.  Most of the financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified accountant.  The Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is

without any inaccuracy.  However, great effort has been made by the Debtor to ensure that all such information is accurate and fairly presented.

The disclosures made in this statement are for information purposes only, and in the event of a conflict between the language in this statement and the language in the Plan, the language in the Plan shall control.

As the holder of a Claim against the Debtor, your vote is important.  The Court may confirm the proposed Plan If it has been accepted by at least two-thirds in total dollar amount and more than one-half in number of the timely received votes of acceptance or rejection by holders of allowed claims of each voting class.  In the event that the requisite acceptances are not obtained, the Debtor will request the Court to confirm the Plan, and the Plan may nevertheless be confirmed, if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

The Debtor believes that the confirmation of the Plan is in the best interests of the holders of Claims.  Accordingly, the Debtor urges that you accept the Plan and that you promptly return your completed ballot so that your vote will be counted.  In order to be tabulated for purposes of satisfying the above requirements, ballots of acceptance must be received at the address on the ballot no later than _____, **2014.**

## 2.  DEFINITIONS

Definitions of certain terms used in the Plan are set forth on Exhibit A - Definitions attached to the Plan.  Other terms are defined in the text of the Plan.  In either case, when a defined term is used, the first letter of each word in the defined term is capitalized.  Terms used and not defined in the Plan shall have the meanings given in the Code or Bankruptcy Rules.

### 3.  OFFICIAL UNSECURED CREDITORS COMMITTEE

An Official Unsecured Creditors Committee ("Committee") has not been appointed in this case.

### 4.  DESCRIPTION OF THE DEBTOR

4.1  **Debtor's Organization**.

Debtor is a Delaware limited liability company with its principal place of business in Oregon.  A list of Debtor's equity members is attached to this Disclosure Statement as **Exhibit 1 - Debtor's List of Equity Members** showing the names and percentage interests of the various members.

4.2  **Debtor's Business and History**.

Invest n Retire, LLC (INR), a limited liability company located in Portland, Oregon, was founded by Darwin Abrahamson in 2004. INR is a technology company which develops proprietary software for the management of retirement plans and separately managed accounts (SMAs).

In October 2003 INR launched its proprietary system with iShares® as the first ETF offering.

In October 2004 INR filed a patent application with the U.S. Patent Office for its System and Method for Managing Tax-deferred Retirement Accounts.

In January 2006 INR introduced TandemModels® software and module which ERISA § 3(38) investment managers use to design and manage asset allocation models. August 2007 INR added a unique enhancement, Self-Aligning Portfolios™, which uses regular payroll contributions to selectively buy underweighted assets in the portfolio to maintain its balance.

January 2008 INR filed a continuation-in-part (CIP) application with the U.S. Patent Office for inclusion of its enhancement, Self-Aligning Portfolios™.

In July 2010 INR replaced its server platform with a Virtual SaaS environment featuring a series of interoperable applications using the latest technology: Microsoft SQL 2008 R2, Win Server 2008 R2 enterprise servers and MS .Net.

In December 2010 INR intergraded Client Relationship Management (CRM) software with TandemModels® for seamless efficiency in creating Fee Disclosure Reports. November 2011 INR dedicated a virtual server to process direct ETF trading with Wolverine Execution Services, Knight Capital, ConvergEx Group, Susquehanna, and Street One Financial.

In November 2011 Invest n Retire, LLC (INR) was granted a patent (pat. US 8,060,428) for its CIP application filed January 29, 2008. Abstract: "A system and method of managing tax-deferred retirement accounts may allow a plurality of participants to invest in a portfolio having a plurality of exchange traded funds (ETFs) according to an asset allocation model. The system and method may use at least one regular contribution to selectively buy at least one underweighted exchange traded fund to cause a participant's portfolio to more closely conform to the asset allocation model. The system and method may allow a plurality of participants to conduct calculations of estimated retirement savings based on a plurality of parameters."

In May 2013 INR added Separately Managed Accounts (SMAs) to its product lineup. Morningstar estimates that SMA accounts control $96 billion in assets as of December 2013 with total assets increasing by 40% in 2013.

December 2013 INR upgraded the participant site to Microsoft MVC 4.0 framework which has the added feature of access for smart phones.

In January 2014 INR was granted a patent (pat. US 8,639,604) for its parent patent filed Oct 2004. Abstract: "A system and method of managing tax-deferred retirement accounts that enable the participants to invest in exchange traded funds (ETFs) and to forecast and intelligently plan for their retirement savings needs. The system and method preferably allow each participant to select an asset allocation model pursuant to which their investments will be managed and periodically rebalance the portfolio of each participant based on the selected asset allocation model."

In June 2014 INR launched The Jazz Platform based on Microsoft .NET 4.5 Platform. This launch provides technology which allows all service providers with a SaaS Subscription agreement access to INR's patented technology. This platform allows subscribers to access INR's software through a Web interface which allows the subscribers to provide services to their respective clients.  In July 2014 INR developed a SaaS Subscription Agreement for execution with future clients.

## 5.   FINANCIAL HISTORY -- PRE-PETITION AND POST-PETITION

5.1   **Pre-Petition**.

For the three calendar years preceding the Petition Date, the Debtor's tax returns showed the following:

|  | **2011** | **2012** | **2013** |
|---|---|---|---|
| Gross Income | $115,010 | $123,094 | $176,108 |
| Less Expenses | ($939,577) | ($536,335) | ($300,346) |
| Net Income | ($824,567) | ($413,241) | ($124,238) |

5.2   **Post-Petition Operations**.

The Debtor has continued to operate its business post-petition.

Subsequent to the Petition date through June 30, 2014, Debtor's unaudited financial results as shown in the monthly Rule 2015 reports filed with the Court are as follows:

| Description | Amount |
|---|---|
| Gross Income from Operations: | $42,349.00 |
| Plus Capital Contributions from Equity Members: | $110,000.00 |
| Less Expenses: | $152,112.00 |
| Net Cash Flow: | $237.00 |

A projected balance sheet, showing Debtor's projected Assets and liabilities as of the projected Effective Date after completion of all payments due under the Plan on or before the Effective Date, is attached to this Disclosure Statement marked **Exhibit 2 - Debtor's Projected Confirmation Balance Sheet**.

## 6. MANAGEMENT

Darwin K. Abrahamson has acted as the sole managing member of Debtor throughout Debtor's existence. Mr. Abrahamson is also the inventor of the Debtor's patented software. Although Mr. Abrahamson customary board-approved pre-petition salary would be $16,666.00 per month, Mr. Abrahamson has not drawn any salary from the company since the petition for relief was filed. Mr. Abrahamson will continue to forgo salary until such time as the Debtor's cash flow would permit resumption of his regular salary $16,666.00 per month, or a portion thereof. Carol Abrahamson (Darwin Abrahamson's wife) serves as the Chief Operating Officer for the company. Mrs. Abrahamson's duties include the following: office management, bookkeeping, work with software architect for business rules for programming and priority tasks, and manage record keeping for clients. Mrs. Abrahamson has been paid a salary of $11,250.00 per month since the petition date.

She will continue to be paid the same salary ($11,250.00 per month) after confirmation and during the performance of the Plan. The only other employee who has been paid a salary by the Debtor subsequent to the petition is Kalyanaraman Ganesan. Mr. Ganesan is the chief software architect for the company and expected to remain in that capacity for the duration of the Plan. Mr. Ganesan's monthly salary is $11,250.00.

The Plan contemplates continuation of current management. Debtor believes retention of current management and of Mr. Ganesan is in the best interests of the bankruptcy estate.

## 7. LITIGATION

7.1 **Pre-Petition Litigation**.

7.1.1 <u>Schroeder Litigation</u>. On May 1, 2012 a foreign judgment was registered with the Circuit Court of the State of Oregon for the County of Multnomah titled: <u>Schroeder v. Invest n Retire, LLC</u>, Case No.1205-05435. The basis for the judgment was collection of an unpaid debt for services provided to the Debtor. As set forth in Schroeder's proof of claim, the approximate amount of the unpaid judgment is $199,355.60. Shortly prior to the Petition Date, Schroeder obtained a writ of execution, levied upon essentially all of Debtor's assets and scheduled a sheriff's sale of the Debtor's assets. The execution sale of Debtor's assets was stayed when the Debtor filed its bankruptcy petition.

7.1.2 <u>Kampner Litigation</u>. On June 14, 2011, Stanley Kampner obtained a judgment against the Debtor for approximately $111,727.00 for breach of contract.

7.2 **Post-Petition Litigation**.

7.2.1 At the time of the filing of the Disclosure Statement, Debtor had not been a party to any post-petition litigation. Debtor does not anticipate involvement in any post-petition litigation.

## 8.  AFFILIATES AND INSIDERS

Debtor's insiders as defined by the Bankruptcy Code, are Darwin and Carol Abrahamson, who collectively hold, through their living trust, approximately 42% of the membership interests of the Debtor.

## 9.  ASSETS

On the Petition Date, Debtor's Assets consisted primarily its ownership interests in certain intellectual product ("IP"), including of a small amount of cash (less than $200); a rental deposit of approximately $6,000; patent entitled: "System and Method for Managing Tax-Deferred Retirement Accounts," Patent Numbers 8,639,604 and 8,060,000 428; certain copyrights relating to computer software known as the "Invest n Retire Record Keeping System, Asset Manager, Sponsor Portal, Participant Portal and Tandem Models"; various office equipment, electronic equipment, furniture; desks and supplies.  **Exhibit 3 - Debtor's Liquidation Analysis** attached to this Disclosure Statement lists Debtor's Assets and the valuations thereof in more detail.

## 10.  LIABILITIES

A summary of Debtor's pre-petition liabilities is as follows:

1)     Secured Claims.

Debtor has three secured creditors: Alfred R Berkeley III; LotSolutions Inc.; and Eric Schroeder.   Alfred R Berkeley III holds a first lien position in essentially all of debtor's assets.  LotSolutions Inc. holds a second lien position-also covering essentially all of Debtor's assets.  Mr. Schroeder Holds a third lien position by virtue of a sheriff's levy on debtor's personal property executed prior to the Petition Date.  The approximate amount of Mr. Berkeley's claim is $495,000. The approximate amount of the claim of LotSolutions is $78,000.  The approximate amount of the claim of Eric Schroeder is $199,000.

2) Priority Claims.

The only priority claims in the case are for unpaid wages owing to Kalyanaraman Ganesan, Darwin Abrahamson and Carol Abrahamson. The amounts of the priority claims held by each of these creditors is $12,475 for a total of $37,425.00.

3) Unsecured Claims.

There are four filed claims of less than $1,000 each, collectively totaling approximately $841.00. There are twenty-two creditors within Class 6 (those creditors holding claims in excess of $1,000 per claim). The approximate total amount owing on the Class 6 claims is $3,894,000.

4) Equity Holders.

There are approximately 24 equity holders holding membership interests in the debtor. Several of debtor's members are also creditors of the debtor.

In addition to its pre-petition debt, the Debtor has retained or likely will retain the following professionals in connection with its bankruptcy case:

(a) Vanden Bos & Chapman, LLP: General Counsel for Bankruptcy Case.

The Debtor estimates that the unpaid fees of its professionals through the time of confirmation of the Plan will be approximately $40,000-50,000. As discussed in Section 12 of this Disclosure Statement, Debtor's professionals are entitled to be paid on an administrative basis to the extent that their fees and employment are approved by the Court. The fee arrangements approved for the Debtor's professionals were their customary hourly rates. The professionals reserve their rights to request allowance and payment of fees and costs in excess of the above estimates.

# 11.  SUMMARY OF THE PLAN

The Plan is not lengthy and should be read in its entirety.  Accordingly, the summary of the Plan here will be kept brief.  The projected payments to the various Classes of creditors is attached hereto as **Exhibit 4 - Debtor's Income and Expense Projections / Debtor's Assumptions Underlying Debtor's Income and Expense Projections and Scheduled Plan Payments**.  A chart disclosing the claims of creditors in the case, broken down by Class is attached to this Statement marked **Exhibit 5 - Summary of Claims of All Creditors**. The specific treatment of the other Claims of Creditors is set forth below:

11.1 **Secured Creditors**.

Secured Creditors will retain their liens until paid in full, unless specifically provided otherwise in the Plan.  Secured Creditors shall have the option of submitting new security agreements to Debtor consistent with the provisions of the Plan for execution by Debtor.  Debtor agrees to sign such documents upon presentation.

Unless otherwise stated, any unpaid deficiency after sale, foreclosure or return of a Secured Creditor's Collateral shall be treated as an Unsecured Claim.  Unless a Secured Creditor files an itemized Claim (or amends an existing Claim) to assert a deficiency Claim within 60 days after sale, foreclosure or return of its Collateral, any such deficiency Claim shall be deemed waived.  A Claim for a deficiency shall be filed with the Court and served upon the Debtor and Debtor's counsel.  Unless the Debtor objects to a deficiency Claim within 60 days of service, the deficiency Claim shall be deemed allowed.

11.1.1    Class 1 - Alfred R. Berkeley, III.

The allowed secured claim of this class will be paid in full in a single lump sum payment, with interest at the rate of 5% per annum, on or before December 31, 2015.  All

accruing interest will be added to the principal balance and paid as part of the single lump-sum payment on or before December 31, 2015.

### 11.1.2 Class 2 - LotSolutions, Inc.

The allowed secured claim of this class will be paid in full in a single lump sum payment, with interest at the rate of 5% per annum, on or before December 31, 2015. All accruing interest will be added to the principal balance and paid as part of the single lump-sum payment on or before December 31, 2015.

### 11.1.3 Class 3 - Eric Schroeder.

The allowed secured claim of this class will be paid in full in a single lump sum payment, with interest at the rate of 5% per annum, on or before December 31, 2015. All accruing interest will be added to the principal balance and paid as part of the single lump-sum payment on or before December 31, 2015.

## 11.2 **Priority Creditors**.

### 11.2.1 Class 4 - Employees.

To the extent that Class 4 Priority Claims for unpaid wages and unpaid health insurance premiums were not paid by the Debtor post-petition in the ordinary course of Debtor's postpetition business operations, each such unpaid Class 4 Priority Claim shall be paid as follows: (1) any unpaid priority wage claims shall be paid without interest in a single lump sum payment on or before December 31, 2015; (2) each employee who holds an allowed Priority Claim for unpaid vacation shall be authorized to utilize the vacation time in accordance with Debtor's customary vacation policies commencing 90 days after the confirmation date. Except as provided hereafter, non-priority wages or other benefits shall be paid as Unsecured Claims under Class 5 or 6, whichever is applicable.

11.3    **Unsecured Creditors**.

11.3.1    Class 5 - Administrative Convenience Class.

Class 5 is impaired.  Class 5 consists of Allowed Unsecured Claims which are equal to or less than $1,000.00.  Each holder of a Claim in such class shall receive cash in an amount equal to 90 percent of such Claim, without interest, within 30 days following the Effective Date.  Any Creditor holding a Claim in excess of $1,000.00 may "opt in" to Class 5 by marking a special "opt in" election on the ballot for voting for or against this Plan. Creditors holding Claims in excess of $1,000.00 who elect to "opt-in" to Class 5 shall agree to reduce their Claims to $1,000.00 and to consent to the treatment of their reduced Claim as called for within Class 5.

11.3.2    Class 6 - General Unsecured Creditors.

Class 6 is impaired.  Each member of Class 6 will within thirty (30) days after the Effective Date of the Plan, receive a note conforming substantially to Exhibit B - Form of Promissory Note for Class 6 which is attached to Debtor's Plan or, if such Claim is disputed, a written objection.  Each note shall have a face amount equal to 100% percent of such holder's Allowed Claim calculated as of the Petition Date.  Each note will be paid in full  in a single lump sum payment, with interest  at the federal judgment interest rate, on or before December 31, 2015.  All accruing interest will be added to the principal balance and paid as part of the single lump-sum payment on or before December 31, 2015.

11.4    **Unclassified Creditors**.

11.4.1    Unclassified - Equity Holders.

Equity Holders shall retain their membership interest in the Debtor unless otherwise ordered by the Court as a condition of confirmation of the Plan.

## 12.   ADMINISTRATIVE EXPENSES

All allowed Administrative Claims which are entitled to priority pursuant to 503 of the Code shall be paid in full, unless otherwise agreed by the holder of such Claim or ordered by the Court, on or before the Effective Date of the Plan, or within ten days of entry of a Court order approving an application for allowance of an Administrative Claim, whichever is the later.

Each holder of an Administrative Claim who is amenable to deferring payment of its Administrative Claim shall be paid interest at 3.25% per annum from the Effective Date on unpaid amounts and shall be granted a security interest, to secure payment of the allowed Administrative Claim, in all of Debtor's Assets, including promissory notes, vehicles, accounts, general intangibles, contract rights, equipment, goods, inventory, instruments, documents of title, policies and certificates of insurance, proceeds of insurance policies, commercial tort claims, payment intangibles, securities, chattel paper, deposits, cash, personal property, real property, and products, rents, and proceeds of the foregoing, now owned or hereafter acquired.  A security interest granted to an administrative claimant shall be subordinate to existing liens or security interests.  The rights of all holders of liens against Debtor's Assets and the administrative claimants shall be preserved and reserved with respect to any future dispute as to the priority of the lien granted to any administrative claimant.  Debtor shall execute any documents requested by the holder of the Administrative Claim to perfect the security interest granted herein.

Debtor anticipates Administrative Claims for its professionals as disclosed in Article 10 of this Statement.

## 13. IMPLEMENTATION

On the Effective Date, the Debtor's status as Debtor-in-Possession shall terminate, and the Debtor shall continue to operate its business in the ordinary course and authorized to engage in any lawful business activities and transactions.

### 13.1    **Effective Date**.

The Effective Date of the Plan shall be the first business day following the 14th day after the Confirmation Date.

### 13.2    **Termination of Debtor-in-Possession**.

On the Confirmation Date, the Debtor's status as Debtor-in-Possession shall terminate, and the Debtor shall continue to operate its business in the ordinary course and authorized to engage in any lawful business activities and transactions.

### 13.3    **Revesting**.

The Debtor shall be vested with all of its property free and clear of all claims, liens, charges or other interests of Creditors arising prior to the entry of the order confirming the Plan except for liens upon property securing Claims provided for in the Plan.  Except as otherwise provided in the Plan, the Debtor may transact business and conduct its affairs free of any restriction of the Court following confirmation of the Plan.

### 13.4    **Source of Funds for Operating Expenses.**

Although Debtor hopes to achieve additional revenue from subscription agreements for the use of its patented software, Debtor's current income is insufficient to meet its current operating expenses without continuing equity contributions from its Equity Holders. The Debtor's projections for income during the life of the Plan, including future contributions of equity by existing equity holders, and the assumptions underlying those projections are

attached to the Disclosure Statement as **Exhibit 2 - Debtor's Income and Expense Projections / Debtor's Assumptions Underlying Debtor's Income and Expense Projections**.

13.5  **Sale of all or Substantially All of Debtor's Assets to Fund Plan Payments**.

In order to make the payments called for under the Plan, the Debtor will sell all or substantially all of Debtor's assets on or before November 15, 2015.  Debtor intends to employ ipCapital Licensing Company, LLC ("IPCLC") to serve as  its marketing agent to market and solicit purchasers for Debtor's assets.  IPCLC handles asset sales, mergers and acquisitions on a contingent basis (commission - no sale, no fee).  IPCLC'S executive leadership team is experienced, flexible, innovative, and committed to facilitating successful intellectual property transactions for clients. Team members pair strong technical backgrounds with extensive industry connections and have experience working with companies ranging from Fortune 100 to early-stage venture-backed startups.  Collectively, IPCLC has worked on over 1,000 IP transactions for technologies including semiconductors, wireless communications, energy management, cloud computing, LEDs, photonics, displays, and memory, among others.  IPCLC website address is: www.ipclc.com.

If, by July 25, 2015, IPCLC is unable to  achieve a sale of sufficient of Debtor's assets to pay all of the obligations owing under the plan, or if the Debtor has not executed on or before July 31, 2015, a written sale agreement for the sale of sufficient of Debtor's assets to pay all allowed claims in full which will close and disburse the sale proceeds to the Debtor on or before December 15, 2015, then Debtor will put Debtor's assets for sale via auction sale held no later than November 15, 2015.  Debtor intends to retain IPAUCTIONS.COM to serve as the auctioneer in the auction process, if needed.  The

auction will, at the discretion of the auction company, be either a traditional auction or an on-line auction. The terms and conditions of the employment of IPAUCTIONS.COM will be its standard terms and conditions, a copy of which should be available for inspection by Creditors at or prior to the confirmation hearing. More information about IPAUCTIONS.COM can be found at the following website address: IPAUCTIONS.COM. If Debtor decides to utilize the services of a different auctioneer to perform the auction of its assets other than IPAUCTIONS.COM, Debtor will provide notice to all Creditors and parties in interest of the identity of the new auctioneer at least 30 days in advance of any scheduled auction of Debtor's assets. Notwithstanding the foregoing, Debtor retains the option to pay the required plan payments to its creditors from sources other than from a sale of Debtor's assets including, but not limited to, funds received from yet unidentified future subscriptions for use of Debtor's software and/or equity contributions from members or from new third party investors.

Debtor cautions Creditors that the Bankruptcy Court has not reviewed nor approved the contents of the websites of IPCLC or IPAUCTIONS.COM. Debtor therefore cannot and does not guaranty the accuracy of information on either website. Creditors should perform their own due diligence and make their own assessments of such information.

13.6 **Retention of Avoidance Claims**.

Avoidance Claims, if any, are retained. Any holder of a Claim against the Debtor shall automatically have such Claim disallowed without further action by the Debtor or order of this Court if the holder of a Claim fails to repay the Debtor any sum that may be recoverable by the Debtor under Bankruptcy Code §§ 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550 or 724(a) within ten days of a final judgment in the Debtor's favor against such Claim holder, unless such Creditor has posted a supersedeas bond for the

entire amount of the Debtor's judgment. Debtor does not believe it holds any avoidance claims and does not intend to pursue avoidance claims.

13.7 **Retention of Third-Party Claims**.

Debtor does not believe it holds any Third-Party Claims.

13.8 **Fees Payable Under 28 U.S.C. § 1930.**

All fees payable under 28 U.S.C. §1930, as determined by the Court shall be paid on or before the Effective Date. All post-petition fees payable under 28 U.S.C. §1930 shall be paid when due. After confirmation, the Debtor shall continue to pay quarterly fees to the office of the United States Trustee and to file quarterly reports with the office of the United States Trustee until this case is closed by the Court, dismissed or converted.

13.9 **Continuation of Retiree Benefits**.

Retiree benefits, if any (and Debtor believes there are none), shall be continued after the Effective Date without modification at the level established pursuant to §1114(e)(1)(B) or (g) of the Code for the duration of the period that the Debtor has obligated itself to provide such benefits.

13.10 **Prepayment**.

Debtor shall not prepay any amounts due to any Creditor or Class of Creditors prior to the due dates set in this Plan, unless all Classes of Creditors are prepaid in full simultaneously, provided however, that any Creditor may voluntarily waive in writing the right to receive a prepayment to which it would otherwise be entitled to receive; and to waive or defer the amount or the due dates to any payment such Creditor would otherwise be entitled to receive under the Plan.

13.11 **Amended Charter**.

If applicable, the Debtor's articles of organization and operating agreement shall be amended on the Effective Date of the Plan to prohibit the issuance of nonvoting equity securities to the extent required by the provisions of 11 U.S.C. § 1123(a)(6).

13.12 **No Attorney Fees**.

No attorneys fees shall be paid with respect to any Claim except as specified in the Plan or allowed by a Final Order of Bankruptcy Court.

13.13 **No Interest**.

Except as expressly stated in the Plan or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be allowed on any Claim, and the Debtor shall be entitled to offset the distribution to any Creditor who has received payment for postpetition, interest, penalties or late charges not approved by the Court.

## 14. LEASES AND EXECUTORY CONTRACTS

14.1 **Leases and Executory Contracts Assumed**.

Effective on and as of the Effective Date, each executory contract and unexpired lease that exist between Debtor and any other party, with respect to which the Debtor has filed a motion in this case for authority to assume and/or that is listed on Exhibit C - Lease Agreements Assumed attached to the Plan, is hereby expressly assumed, except for any executory contracts and unexpired leases that have been rejected by the Debtor with the approval of the Court on or before the Effective Date or with respect to which a motion for rejection has been filed on or before the Confirmation Date. Entry of the Confirmation Order shall constitute approval of the assumption and assignment of executory contracts and unexpired leases as provided in this Section. Debtor believes that it is current on all of

its leases and executory contracts, and therefore any amounts to cure should be insignificant or will have been paid in the ordinary course of business. In the event a lease or executory contract is in arrears, as soon as practicable after the Effective Date, Debtor will cure or provide adequate assurance that Debtor will promptly cure any default and will promptly compensate, or provide adequate assurance that Debtor will promptly compensate, the other party to such lease or contract for any pecuniary loss to such party resulting from any default.

14.2 **Leases and Executory Contracts Rejected**.

Without admitting the existence of, or validity of, any other executory contract or unexpired lease, all executory contracts or unexpired leases with respect to which Debtor has not filed a motion seeking authority to assume or which are not expressly assumed in the Plan shall be rejected on the Effective Date. Any Claims for damages arising by reason of the rejection of any executory contract or unexpired lease will be disallowed and the holder thereof barred from receiving distributions under the Plan unless a Proof of Claim for such damages on account of rejection is filed with the Court within thirty days after the Effective Date. Any Claims based upon rejection of a lease for real property shall be limited to the amount set forth in 11 U.S.C. § 502(b)(6). Lease Rejection Claims shall be treated as general Unsecured Claims.

## 15. RISKS

Risks to successful performance of the Plan include the risk that the Debtor is not successful in retaining and/or procuring sufficient numbers of clients to meet the operating expense requirements of the company and/or to meet the payments required under the Plan. There is a risk that Debtor's assets, particularly its patents and other IP, will not sell for the sums projected by Debtor with the result that the proceeds from the asset sale are

insufficient to meet Debtor's obligations under the Plan.   Any inability to meet the payments required by the Plan would likely result in conversion of the case to a case under chapter 7 of the Bankruptcy Code. In the event that the case is dismissed or converted to a Chapter 7, the unsecured and priority creditors would likely not receive any payment on their Claims and the equity holders would stand little chance of receiving any distribution on account of their equity positions.

## 16.  TAX CONSEQUENCES TO DEBTOR

Circular 230 Disclaimer:  To ensure compliance with the requirements imposed by the Internal Revenue Service, we inform you that (a) any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding tax-related penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any transaction or tax matter(s) addressed herein, and (b) this discussion was written in connection with Debtor soliciting acceptances of the Plan through this Disclosure Statement. Debtor does not believe that confirmation of the Plan will result in any material tax consequences with respect to the Debtor.

## 17.  DEFAULT

Except as otherwise specifically provided in the Plan, in the event Debtor shall default in the performance of any of its obligations under the Plan, then a claimant may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim. Nothing contained in the Plan shall limit the right of any party to reopen this case or to convert this case to a liquidation case under Chapter 7 of the Bankruptcy Code if cause for such relief exists.

Debtor shall be entitled to written notice of any claimed default under the Plan, and shall have twenty (20) days opportunity to cure. If such claimed default is cured within the twenty (20) days cure period, then such Creditor shall not be entitled to enforce any remedies which would otherwise be available on account of such default. If Debtor fails to cure within the twenty (20) days cure period, then such Creditor may seek such remedies as are granted by law to enforce its rights arising under and pursuant to the Plan, including seeking an order to compel such performance. The default and cure provisions contained in this Plan shall supercede any provisions concerning default and cure contained in any other agreement between Debtor and any Creditor affected by this Plan.

Notice of default shall be effective when served simultaneously via email at the email addresses shown below and mailed to both the Debtor and to the Debtor's attorney, if any, postage prepaid, at the following addresses:

**Debtor**:

Invest n Retire, LLC
Attn: Darwin K. Abrahamson, Manager
506 SW 6th Ave., Ste. 1200
Portland, OR 97204
Email: darwin@investnretire.com

**Debtor's Attorney**:

Robert J Vanden Bos
VANDEN BOS & CHAPMAN, LLP
319 SW Washington, Suite 520
Portland, OR 97204
Email: bob@vbcattorneys.com

## 18. MODIFICATION OF THE PLAN

The Debtor may, upon compliance with requirements of 11 U.S.C. § 1127, propose amendments or modifications to the Plan, or withdraw the Plan and propose a new Plan, at any time prior to confirmation with the permission of the Court and upon notice to affected Creditors. If there should be a material positive change in Debtor's operating income prior

to the confirmation hearing, and if such material change would enable the Debtor to pay all allowed claims from Debtor's operating income within four years or less, Debtor would intend to withdraw and/or modify its current Plan to retain Debtor's existing assets instead of selling all assets, and to propose to pay all allowed claims within four years from such projected net operating income.  If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceeding involving the Debtor. After confirmation, Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defects, omissions or reconcile any inconsistencies in the Plan in whatever way is necessary to carry out the purposes of the Plan.

## 19.  ALTERNATIVES

Alternatives to the Plan include adoption of a different Plan, dismissal of the case, or conversion of the case to a case under Chapter 7.  If the case is dismissed, Creditors may assert and enforce their Claims against Debtor by any method allowed by law.  Secured Creditors may foreclose their security interests and Creditors may obtain judgments and levy execution on unencumbered Assets.  If this case is converted to a Chapter 7 case, a Trustee will be appointed to liquidate Debtor's Assets for the benefit of the estate.

## 20.  CONFIRMATION OF THE PLAN

20.1  **Best Interest of Creditors Test**.

Debtor believes that all general Unsecured Creditors will receive under the Plan, on account of their Claims, property having a value, as of the date of confirmation of the Plan, that is equal to or in excess of the amount that such Creditors would receive if Debtor's

Assets were liquidated under a Chapter 7 case. This is commonly referred to as the "Best Interest of Creditors" standard. Debtor believes that in an orderly liquidation, with sufficient time to market Debtor's assets, the Unsecured Creditors would receive a 100% payout. In a forced liquidation under Chapter 7, Debtor believes that unsecured creditors would likely not receive any distribution on their unsecured claims. Because Debtor is proposing to pay Unsecured Creditors 100% of their Claims through the Plan, Debtor believes that the Plan is in the best interests of its Creditors.

20.2 **Fair and Equitable Test.**

The Court may confirm the Plan upon finding that the Plan is fair and equitable under the provisions of 11 U.S.C. § 1129(b). Debtor believes that the Plan proposed is fair and equitable and satisfies the requirements of 11 U.S.C. § 1129(b). Debtor will seek confirmation of the Plan, even if the Plan is not accepted by all classes of Creditors.

20.3 **Voting Procedures.**

A ballot for voting for the acceptance or rejection of the Plan is attached as the last Exhibit (**Exhibit 6 - Ballot for Accepting or Rejecting Debtor's Plan**) to this Disclosure Statement and should be removed and used for voting on the Plan. Holders of Claims and interests should carefully read the instructions contained on the ballot and complete, date, and sign the ballot and transmit it to the address indicated on the ballot. In order for a holder's vote to be tabulated, the holder's ballot must be received at the address indicated on the ballot not later than date set forth in the Order accompanying this Disclosure Statement. Ballots may be filed by fax at (503) 241-3731 so long as the Ballot containing the original signature of the Creditor is returned by mail postmarked on or before the deadline date for voting. Failure to vote or a vote to reject the Plan will not affect a Creditor's Claim if the Plan is ultimately confirmed.

A class of Claims will have accepted the Plan if the Plan is accepted by Creditors holding at least two-thirds in total dollar amount and more than one-half in number of the Allowed Claims of such class voting on the Plan. A Class of Interests will have accepted the Plan if voting members of that class holding at least two-thirds in amount of the allowed interests voting, have voted for the Plan. All of the foregoing percentage requirements are determined entirely from those Creditors or interests that actually vote. If a Class of Claims is not impaired, it is deemed to accept the Plan.

In addition to either voting in favor or against confirmation of the Plan, any Creditor holding a Claim in excess of $1,000 may "opt in" to Class 5 by marking a special "opt in" election on the ballot for voting for or against this Plan. Creditors holding Claims in excess of $1,000 who elect to "opt-in" to Class 5 shall agree to reduce their Claims to $1,000 and to consent to the treatment of their reduced Claim as called for within Class 5.

20.4 **Hearing on Confirmation**.

The hearing on confirmation of the Plan has been set for _____, 2014, at ____**:**___ _**.m.** before the Honorable Trish M. Brown, United States Bankruptcy Judge, Courtroom No. 4, United States Bankruptcy Court, 1001 SW Fifth Avenue, Suite 700, Portland, Oregon 97204. The Bankruptcy Court will confirm the Plan at the hearing only if the relevant requirements set forth in 11 U.S.C. § 1129 are satisfied.

Objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for Debtor on or before the deadline specified in the Order accompanying this Disclosure Statement. Counsel for Debtor on whom objections must be served is Robert J Vanden Bos, Vanden Bos & Chapman, LLP, 319 SW Washington, Suite 520, Portland, Oregon 97204-2620.

20.5   **Effect of Confirmation of the Plan.**

Confirmation of the Plan shall have the effect provided in 11 U.S.C. § 1141.

DATED this 30th day of July, 2014.

Respectfully submitted,

Invest n Retire, LLC

By:/s/Darwin K. Abrahamson
     Darwin K. Abrahamson, Managing Member

PRESENTED BY:

By:/s/Robert J Vanden Bos
    Robert J Vanden Bos, OSB #78100
    VANDEN BOS & CHAPMAN, LLP
    319 S.W. Washington, Suite 520
    Portland, Oregon  97204
    Telephone:  (503) 241-4869
    Fax: (503) 241-3731

    Of Attorneys for Debtor-in-Possession

## EXHIBIT LIST

**Exhibit 1 - Debtor's List of Equity Members**
**Exhibit 2 - Debtor's Projected Confirmation Balance Sheet**
**Exhibit 3 - Debtor's Liquidation Analysis**
**Exhibit 4 - Debtor's Income and Expense Projections / Debtor's Assumptions**
       **Underlying Debtor's Income and Expense Projections and Scheduled Plan**
       **Payments**
**Exhibit 5 - Summary of Claims of All Creditors**
**Exhibit 6 - Ballot for Accepting or Rejecting Debtor's Plan**

# EXHIBIT 1

## DEBTOR'S LIST OF EQUITY MEMBERS

Invest n Retire, LLC
Members Equity Interest

| Member | Member Equity Interest |
|---|---|
| Darwin Abrahamson and Carolyn Abrahamson Living Trust 7/07/95 | 41.19% |
| Harmon Survivor's Trust UTD Aug 1, 1978 | 12.68% |
| John E. Herzog | 7.07% |
| Kalyanaraman Ganesan | 1.14% |
| Thomas H. Killion | 1.04% |
| Thomas E. Babcock | 1.00% |
| Michael B. Glackin | 0.90% |
| Jeffrey M. Hugo | 0.79% |
| Bette Harmon | 1.88% |
| Osthimer Family Trust U/A DTD 02/13/92 | 1.76% |
| Toby S. Wolf | 0.64% |
| Daniel R. Kluza | 0.64% |
| McQuown Enterprises LLC | 0.85% |
| Charles H. Horn | 0.31% |
| Stanley L. Kampner Trust, dated Nov. 7, 2001 | 11.34% |
| Paul Kampner Family Trust DTD 09-25-2011 | 1.47% |
| NTC & CO FBO Benjamin Eisler 050060838244 | 0.39% |
| NTC & CO FBO Robert Flood 060000120256 | 0.40% |
| NTC & CO FBO Jeffrey M. Hugo 060000103950 | 3.92% |
| Alfred R. Berkeley III | 2.35% |
| NTC & CO FBO Kenneth L. Fish 070000007815 | 1.24% |
| Joseph A. Cajigal | 1.95% |
| KX2 Pacific Assets LLC | 0.68% |
| Boyd K. Fish | 2.35% |
| PENSCO Trust Company FBO Boyd K Fish 080000004812 | 2.00% |
| **Total Interest** | **100.00%** |

EXHIBIT 1 - Page 1 of 1

# EXHIBIT 2

## DEBTOR'S PROJECTED CONFIRMATION
## BALANCE SHEET

**Debtor's Disclosure Statement**
**Projected Confirmation Balance Sheet**
**Exhibit 2**

### Debtor's Projected Confirmation Balance Sheet

**Assets**

**Real Property**

| | | | | | |
|---|---|---|---|---|---|
| None | $ | - | | | |
| **Real Property (Total)** | | | $ | - | |

**Personal Property**

| | | | | | |
|---|---|---|---|---|---|
| Cash & Bank Accts | $ | 18,951.00 | | | |
| Rental Deposit (506 Wilcox, LLC) | $ | 5,982.00 | | | |
| Intellectual Property (Patents 8639604 & 8060428) | | Unknown | | | |
| Intellectual Property (Trademarks) | | Unknown | | | |
| Intellectual Property (Copyrights) | | Unknown | | | |
| Misc. Office Equipment & Computer | $ | 15,000.00 | | | |
| Binding Machine, Supplies | $ | 135.00 | | | |
| **Personal Property (Total)** | | | $ | 40,068.00 | |
| **Total Assets** | | | | $ | 40,068.00 |

**Liabilities**

| | | | | |
|---|---|---|---|---|
| **Secured Debt** | $ | 757,123.60 | | |
| **Administrative Debt** | | | | |
| **Priority Debt** | $ | 505,444.44 | | |
| **Unsecured Debt** | $ | 3,427,235.80 | | |
| **Total Liabilities** | | | $ | 4,689,803.84 |

| | | |
|---|---|---|
| **Net Worth** | $ | (4,649,735.84) |

Disclaimers:

(1) All figures are subject to change until review with tax counsel and/or CPA.

(2) Asset values are based on the liquidation analysis provided with the Disclosure Statement. In some cases, valuations are based on Debtor-in-Possession's ("Debtor") 2015-3 Report which utilizes book value. Book value is based on the cost of an asset minus any accumulated depreciation. As a result, the values stated for assets may not reflect fair market value. Company assets may have increased or decreased in fair market value since acquisition; depreciation taken pursuant to the Internal Revenue Code and the regulations thereunder may or may not accurately reflect changes in fair market value.

(3) Liabilities are based on Scheduled and Filed Claims.

(4) The financial information provided herein is prepared from the books and records kept by the Debtor in its regular course along with documents prepared for use in Debtor's bankruptcy case. (collectively "Documents"). Such Documents may not be (and in some instances are not) kept according to published Accounting Standards; accordingly, the financial information should not be considered as having been prepared using Generally Accepted Accounting Principles (GAAP).



Exhibit 2 - Page 1 of 1

7/17/2014

Case 14-30772-tmb11    Doc 67    Filed 07/31/14

# EXHIBIT 3

## DEBTOR'S LIQUIDATION ANALYSIS

## DEBTOR'S ASSETS:

### Schedule A - Real Property

None

### Schedule B - Personal Property

| Personal Property: | Liquidation Values | Liquidation Costs | Liquidation Equity |
|---|---|---|---|
| Cash & Bank Accts | $182.77 | $0.00 | $182.77 |
| Rental Deposit (506 Wilcox, LLC) | $5,982.00 | $0.00 | $5,982.00 |
| Intellectual Property (Patent Nos. 8639604 & 8060428, Trademarks, Copyrights) | $500,000.00 | $35,000.00 | $465,000.00 |
| Misc. Office Equipment & Computer | $15,000.00 | $1,050.00 | $13,950.00 |
| Binding Machine, Supplies | $135.00 | $9.45 | $125.55 |
| | | | $485,240.32 |

Subtotal, Equity (if any) in Personal Property

| | |
|---|---|
| NET EQUITY IN REAL ESTATE: | $0.00 |
| NET EQUITY IN PERSONAL PROPERTY: | $485,240.32 |
| TOTAL EQUITY AVAILABLE FOR CREDITORS | $485,240.32 |

**LESS ADMINISTRATIVE EXPENSES:**

| | |
|---|---|
| Vanden Bos & Chapman, LLP | $45,000.00 |
| TOTAL: | $45,000.00 |

**LESS CHAPTER 7 ADMINISTRATIVE EXPENSES:**

| | | |
|---|---|---|
| 25% - First $5,000 | $1,250.00 | |
| 10% - $5,000 - $50,000 | $4,500.00 | |
| 5% - $50,000 - $1,000,000 | $21,762.02 | |
| Subtotal Administrative Expenses: | $27,512.02 | ($72,512.02) |

**LESS PRIORITY CLAIMS:**

| | | |
|---|---|---|
| | $0.00 | |
| | $0.00 | $0.00 |

| | |
|---|---|
| Subtotal, Available for Unsecured Creditors | $412,728.30 |

**UNSECURED CLAIMS:**

| | |
|---|---|
| Class 3 Administrative Convenience Class | $841.00 |
| Classes 4 - Unsecured Claim Classes | $3,911,669.00 |
| | $3,912,510.00 |

| | |
|---|---|
| **Estimated Unsecured Claim Total:** | $3,912,510.00 |

| | |
|---|---|
| **Projected Percentage Distribution to Unsecured Creditors :** | 11% |

# EXHIBIT 4

## DEBTOR'S INCOME AND EXPENSE PROJECTIONS /
## DEBTOR'S ASSUMPTIONS UNDERLYING DEBTOR'S INCOME AND EXPENSE PROJECTIONS AND SCHEDULED PLAN PAYMENTS

INVEST n RETIRE, LLC
Debtor's Income and Expense Projections / Debtor's Assumptions Underlying
Debtor's Income and Expense Projections and Scheduled Plan
Payments - 2014

| Income | | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|
| | Contract Revenue (paid quarterly) | 44,256 | 0 | 0 | 44,256 |
| | Equity Contributions | 60,000 | 0 | 0 | 60,000 |
| | Asset Sale Proceeds | 0 | 0 | 0 | 0 |
| | **Total Income** | **104,256** | **0** | **0** | **104,256** |

General & Administrative Expenses

| | Oct | Nov | Dec | Total |
|---|---|---|---|---|
| Office Rent | 5,753 | 5,753 | 5,753 | 17,259 |
| Employee Health Insurance | 1,906 | 1,906 | 1,906 | 5,718 |
| Utilities | 880 | 880 | 880 | 2,640 |
| Office Supplies | 100 | 0 | 0 | 100 |
| ADT - Alarm System | 116 | 0 | 0 | 116 |
| Property Insurance | 50 | 50 | 50 | 150 |
| IT Services | 700 | 700 | 700 | 2,100 |
| Payroll | 22,500 | 22,500 | 22,500 | 67,500 |
| ER Payroll Taxes | 2,295 | 2,295 | 2,295 | 6,885 |
| Payroll Services | 75 | 75 | 75 | 225 |
| Accessline Phone | 65 | 65 | 65 | 195 |
| Steele Systems | 62 | 62 | 62 | 186 |
| CTO GOTO Webinar | 99 | 99 | 99 | 297 |
| Misc. Expenses | 100 | 0 | 0 | 100 |

| | | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|
| **Total General & Administrive Expenses** | | 34,701 | 34,385 | 34,385 | 103,471 |
| **Net Profit or Loss:** | | 69,555 | -34,385 | -34,385 | 785 |
| **Net Cash Carry:** | as of 9/30/14 | 78,654 | 78,654 | 132,234 | 82,008 |
| **Available for Debt Service:** | | 148,209 | 97,849 | 47,623 | |

EXHIBIT 4 - Page 1 of 4

INVEST n RETIRE, LLC
Debtor's Income and Expense Projections / Debtor's Assumptions Underlying
Debtor's Income and Expense Projections and Scheduled Plan
Payments - 2014

REPAYMENT PLAN

| Available for Debt Service: | | | | 148,209 | 97,849 | 47,623 | |

| | CREDITOR NAME | BALANCE OF CLAIM AMOUNT | INTEREST RATE | OCT. | NOV. | DEC. | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|
| Admin | Vanden Bos & Chapman | 45,000 | 3.25% | 15,000 | 15,000 | 15,243 | 45,243 |
| Admin | U.S. Trustee | N/A | | 975 | 0 | 0 | 975 |
| Admin | | | | 0 | 0 | 0 | 0 |
| | Subtotal: | | | 15,975 | 15,000 | 15,243 | 46,218 |
| | | | | | | | |
| Class 1 | Alfred R. Berkeley III | 567,146 | 5% | 0 | 0 | 0 | 0 |
| Class 2 | LOTSolutions, Inc. | 77,892 | 5% | 0 | 0 | 0 | 0 |
| Class 3 | Eric Schroeder | 199,356 | 5% | 0 | 0 | 0 | 0 |
| | Subtotal: | | | 0 | 0 | 0 | 0 |
| | | | | | | | |
| Class 4 | Employee Wage Claims | 37,425 | 5% | 0 | 0 | 0 | 0 |
| | Subtotal: | | | 0 | 0 | 0 | 0 |
| | | | | | | | |
| Class 5 | Admin Convenience Class (under $1,000 owed) | 841 | 0% | 0 | 841 | 0 | 841 |
| Class 6 | General Unsecured Creditors (over $1,000 owed) | 3,911,669 | 0% | 0 | 0 | 0 | 0 |
| | Subtotal: | | | 0 | 841 | 0 | 841 |
| | | | | | | | |
| | Total Plan Payments: | | | 15,975 | 15,841 | 15,243 | 47,059 |
| | Net Cash Carry: | | | 132,234 | 82,008 | 32,380 | |

EXHIBIT 4 - Page 2 of 4

Case 14-30772-tmb11    Doc 67    Filed 07/31/14

# INVEST n RETIRE, LLC

Debtor's Income and Expense Projections / Debtor's Assumptions Underlying
Debtor's Income and Expense Projections and Scheduled Plan
Payments - 2015

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| Contract Revenue (paid quarterly) | 44,256 | 0 | 0 | 44,256 | 0 | 0 | 44,256 | 0 | 0 | 44,256 | 0 | 0 | 177,024 |
| Equity Contributions | 60,000 | | | 60,000 | | | 60,000 | | | 60,000 | | | 240,000 |
| Asset Sale Proceeds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,000,000 | 5,000,000 |
| **Total Income** | 104,266 | 0 | 0 | 104,266 | 0 | 0 | 104,266 | 0 | 0 | 104,266 | 0 | 5,000,000 | 5,417,024 |
| | | | | | | | | | | | | | |
| **General & Administrative Expenses** | | | | | | | | | | | | | |
| Office Rent | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 5,753 | 69,036 |
| Employee Health Insurance | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 1,906 | 22,872 |
| Utilities | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 880 | 10,560 |
| Office Supplies | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100 | 0 | 0 | 100 |
| ADT - Alarm System | 116 | 0 | 0 | 116 | 0 | 0 | 116 | 0 | 0 | 116 | 0 | 0 | 464 |
| Property Insurance | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 |
| IT Services | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Payroll | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 270,000 |
| ER Payroll Taxes | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 2,295 | 27,540 |
| Payroll Services | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 900 |
| Accessline Phone | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 780 |
| Steele Systems | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 744 |
| CTO GOTO Webinar | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 99 | 1,188 |
| Misc. Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| | | | | | | | | | | | | | |
| **Total General & Administrive Expenses** | 34,601 | 34,485 | 34,485 | 34,601 | 34,485 | 34,485 | 34,601 | 34,485 | 34,485 | 34,701 | 34,485 | 34,485 | 414,384 |
| | | | | | | | | | | | | | |
| **Net Profit or Loss:** | 69,665 | -34,485 | -34,485 | 69,665 | -34,485 | -34,485 | 69,665 | -34,485 | -34,485 | 69,655 | -34,485 | 4,965,515 | 6,002,640 |
| | | | | | | | | | | | | | |
| **Net Cash Carry:** | 32,380 | 101,060 | 66,575 | 32,090 | 100,770 | 66,285 | 31,800 | 100,480 | 65,995 | 31,510 | 100,090 | 4,966,515 | 6,002,640 |
| | | | | | | | | | | | | | |
| **Available for Debt Service:** | 102,035 | 66,575 | 32,090 | 101,745 | 100,770 | 66,285 | 101,455 | 100,480 | 65,995 | 101,065 | 66,605 | 5,031,120 | |

EXHIBIT 4 - Page 3 of 4

INVEST n RETIRE, LLC

Debtor's Income and Expense Projections / Debtor's Assumptions Underlying
Debtor's Income and Expense Projections and Scheduled Plan
Payments - 2015

## REPAYMENT PLAN

| | Creditor Name | Balance of Claim Amount | Interest Rate | JAN. | FEB. | MAR. | APRIL | MAY | JUNE | JULY | AUG | SEPT. | OCT. | NOV. | DEC. | Annual Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Available for Debt Service:** | | | | 102,036 | 66,575 | 32,090 | 101,746 | 66,285 | 31,800 | 101,455 | 66,995 | 31,510 | 101,065 | 66,605 | 5,031,120 | |
| Admin | Varden Bos & Chapman | 0 | 3.25% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Admin | U.S. Trustee | N/A | | 975 | | | 975 | | | 975 | | | 975 | | | 3,900 |
| Admin | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **Subtotal:** | | | 975 | 0 | 0 | 975 | 0 | 0 | 975 | 0 | 0 | 975 | 0 | 0 | 3,900 |
| Class 1 | Alfred R. Berkeley III | 567,146 | 5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 624,065 | 624,065 |
| Class 2 | LOTSolutions, Inc. | 77,892 | 5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 112,766 | 112,766 |
| Class 3 | Eric Schroeder | 199,356 | 5% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 219,365 | 219,365 |
| | **Subtotal:** | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 956,196 | 956,196 |
| Class 4 | Employee Wage Claims | 37,425 | 0% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 37,425 | 37,425 |
| | **Subtotal:** | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 37,425 | 37,425 |
| Class 5 | Admin Convenience Class (under $1,000 owed) | 841 | 0% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 6 | General Unsecured Creditors (over $1,000 owed) | 3,911,669 | 0.01% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,919,925 | 3,919,925 |
| | **Subtotal:** | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,919,925 | 3,919,925 |
| | **Total Plan Payments:** | | | 975 | 0 | 0 | 975 | 0 | 0 | 975 | 0 | 0 | 975 | 0 | 4,913,546 | 4,913,546 |
| | **Net Cash Carry:** | | | 101,060 | 66,575 | 32,090 | 100,770 | 66,285 | 31,800 | 100,480 | 65,995 | 31,510 | 100,090 | 65,605 | 117,574 | |

EXHIBIT 4 - Page 4 of 4

Case 14-30772-tmb11    Doc 67    Filed 07/31/14

# EXHIBIT 5

## SUMMARY OF CLAIMS OF ALL CREDITORS

INVEST n RETIRE, LLC

SUMMARY OF
CLAIMS OF ALL CREDITORS

| Class # | S/P /U | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount | Disputed Amount | Net Allowed Claim | Obj* | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | |
| Class 1 | S | 3 | Alfred R. Berkeley III | $ 405,000.00 | $ 567,145.65 | $ (72,145.65) | $ 567,145.65 | - | $ 567,145.65 | | |
| Class 2 | S | 7 | LOTSolutions, Inc. | $ 68,563.00 | $ 77,891.66 | $ (9,328.06) | $ 77,891.66 | - | $ 77,891.66 | | |
| Class 3 | S | 4 | Eric Schroeder | $ 193,560.00 | $ 199,355.60 | $ (5,795.60) | $ 199,355.60 | - | $ 199,355.60 | | |
| | | | | | | | | | | | |
| **Employee Claims - Priority Portion Only** | | | | | | | | | | | |
| Class 4 | P | | Kalyanaraman Ganesan | $ 114,333.33 | $ 12,475.00 | $ 101,858.33 | $ 12,475.00 | | $ 12,475.00 | | Non-Priority portion will be treated as unsecured class 6 |
| Class 4 | P | | Darwin Abrahamson | $ 293,333.33 | $ 12,475.00 | $ 280,858.33 | $ 12,475.00 | | $ 12,475.00 | | Non-Priority portion will be treated as unsecured class 6 |
| Class 4 | P | | Carolyn Abrahamson | $ 97,777.78 | $ 12,475.00 | $ 85,302.78 | $ 12,475.00 | | $ 12,475.00 | | Non-Priority portion will be treated as unsecured class 6 |
| | | | | $ 505,444.44 | | $ 489,019.44 | $ 37,425.00 | | $ 37,425.00 | | |
| | | | | | | | | | | | |
| **ADMINISTRATIVE CONVENIENCE - UNSECURED UNDER $1000** | | | | | | | | | | | |
| Class 5 | U | | University Club | $ - | | $ - | $ - | | $ - | | |
| Class 5 | U | | Integra | $ 326.25 | | $ 326.25 | $ 326.25 | | $ 326.25 | | |
| Class 5 | U | | ADT Security Services | $ 303.05 | | $ 303.05 | $ 303.05 | | $ 303.05 | | |
| Class 5 | U | | Liberty Mutual Insurance | $ 116.87 | | $ 116.87 | $ 116.87 | | $ 116.87 | | |
| Class 5 | U | | TW Telecom | $ 95.00 | | $ 95.00 | $ 95.00 | | $ 95.00 | | |
| Class 5 | U | | AT&T Mobility | $ - | | $ - | $ - | | $ - | | |
| | | | **Subtotal Class 5** | $ 841.17 | | $ 841.17 | $ 841.17 | | $ 841.17 | | |
| | | | | | | | | | | | |
| **UNSECURED OVER $1000** | | | | | | | | | | | |
| Class 6 | U | | Kalyanaraman Ganesan | $ 101,858.33 | $ - | $ 101,858.33 | $ 101,858.33 | - | $ 101,858.33 | | |
| Class 6 | U | | Darwin Abrahamson | $ 280,858.33 | $ - | $ 280,858.33 | $ 280,858.33 | - | $ 280,858.33 | | |
| Class 6 | U | | Carolyn Abrahamson | $ 85,302.78 | $ - | $ 85,302.78 | $ 85,302.78 | - | $ 85,302.78 | | |
| Class 6 | U | | Bette Harmon | $ 1,302,866.91 | | $ 1,302,866.91 | $ 1,302,866.91 | | $ 1,302,866.91 | | |
| Class 6 | U | | John E. Herzog | $ 891,346.22 | $ - | $ 891,346.22 | $ 891,346.22 | | $ 891,346.22 | | |
| Class 6 | U | | Carolyn Abrahamson | $ 727,271.52 | $ - | $ 727,271.52 | $ 727,271.52 | | $ 727,271.52 | | |
| Class 6 | U | | Reed Foster | $ 146,877.00 | $ - | $ 146,877.00 | $ 146,877.00 | | $ 146,877.00 | | |
| Class 6 | U | 5 | Quarles & Brady LLP | $ 112,964.05 | $ 122,772.05 | $ (9,808.00) | $ 122,772.05 | - | $ 122,772.05 | | |
| Class 6 | U | 2 | Stanley Kempner | $ 111,727.51 | $ - | $ 111,727.51 | $ 111,727.51 | | $ 111,727.51 | | |
| Class 6 | U | | Joseph Childrey | $ 32,598.17 | | $ 32,598.17 | $ 32,598.17 | | $ 32,598.17 | | |
| Class 6 | U | | Kenneth Fish | $ 20,485.00 | $ - | $ 20,485.00 | $ 20,485.00 | | $ 20,485.00 | | |
| Class 6 | U | | Advanta Credit Cards | $ 18,621.16 | | $ 18,621.16 | $ 18,621.16 | | $ 18,621.16 | | |
| Class 6 | U | 1 | Dunn Carney Allen Higgins & Tongue, LLP | $ 9,900.00 | $ 9,900.00 | | $ 9,900.00 | | $ 9,900.00 | | |
| Class 6 | U | 8 | Miller Nash | $ 9,507.50 | $ 10,243.50 | $ (646.00) | $ 10,243.50 | | $ 10,243.50 | | |
| Class 6 | U | 6 | Cox Smith Matthews Inc. | $ 9,062.90 | $ 15,863.40 | $ (6,800.50) | $ 15,863.40 | | $ 15,863.40 | | |
| Class 6 | U | | Capital One Bank N.A. | $ 6,863.09 | | $ 6,863.09 | $ 6,863.09 | | $ 6,863.09 | | |
| Class 6 | U | | 505 Willcox LLC | $ 5,732.98 | | $ 5,732.98 | $ 5,732.98 | | $ 5,732.98 | | |

EXHIBIT 5 - Page 1 of 2

INVEST n RETIRE, LLC
SUMMARY OF
CLAIMS OF ALL CREDITORS

| Class # | SP/IU | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount | Disputed Amount | Net Allowed Claim | Obj* | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 6 | U | | Assured Technology Solutions | $ 5,376.90 | $ - | $ 5,376.90 | $ 5,376.90 | $ - | $ 5,376.90 | | |
| Class 6 | U | | Staples | $ 4,648.57 | $ - | $ 4,648.57 | $ 4,648.57 | $ - | $ 4,648.57 | | |
| Class 6 | U | | Office Depot | $ 4,200.05 | $ - | $ 4,200.05 | $ 4,200.05 | $ - | $ 4,200.05 | | |
| Class 6 | U | | Capital One Bank N.A. | $ 3,315.10 | $ - | $ 3,315.10 | $ 3,315.10 | $ - | $ 3,315.10 | | |
| Class 6 | U | | iNR Advisory Services | $ 3,000.00 | $ - | $ 3,000.00 | $ 3,000.00 | $ - | $ 3,000.00 | | |
| | | | | $ - | | | | | $ - | | |
| | | | Subtotal Class 6 | $ 3,894,414.07 | $ 158,778.96 | $ 3,735,635.12 | $ 3,911,668.57 | $ - | $ 3,911,668.57 | | |
| | | | | | | | | | | | |
| EQUITY HOLDERS | | | | | | | | | | | |
| | | | Toby S. Wolf | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Thomas H. Killion | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Thomas E. Babcock | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Stanley L. Kampner Trust, dated | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Paul Kampner Family Trust DTD 09-25-2011 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Gathiner Family Trust u/A DTD 02/13/92 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | NTC & CO FBO Robert Flood 060000120256 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | NTC & CO FBO Kenneth L. Fish 07000000781 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | NTC & CO FBO Jeffrey M. Hugo 060000010395 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | NTC & CO FBO Benjamin Eisler 05006083824 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Michael B. Glackin | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | McGowan Enterprises LP | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | KK2 Pacific Assets LLC | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Kalyanaraman Ganesan | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Joseph A. Caljgal | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | John E. Herzog | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Jeffrey M. Hugo | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Harmon Survivor's Trust UTD Aug 1, 1978 | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Darwin Abrahamson and Carolyn Abrahamson | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Daniel R. Kluza | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Charles H. Henn | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Boyd K. Fish | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Bette Harmon | $ - | $ - | $ - | $ - | $ - | $ - | | |
| | | | Alfred R. Berkeley III | $ - | $ - | $ - | $ - | $ - | $ - | | |

* All entries with an "X" in the Obj column: These claims have been or will be objected to due to due to pre-petition payment in part or in full or because the debt is not a debt of the Debtor.

EXHIBIT 5 - Page 2 of 2

# EXHIBIT 6

## BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S PLAN

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. 14-30772-tmb11 |
| | ) | |
| Invest n Retire, LLC, | ) | BALLOT FOR ACCEPTING OR |
| | ) | REJECTING DEBTOR'S |
| Debtor-in-Possession. | ) | PLAN |
| | ) | |

Filed By:_____on:_____
           Company or Creditor's Name                       Date

     Number of your Class in the plan: _____.

     The Plan referred to in this ballot can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in total dollar amount and more than one-half in number of Claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it. To have your vote count, you must complete and return this ballot.

     The undersigned: (check one box)

         _____Accepts             _____Rejects

the Debtors' Plan of Reorganization of the above-named Debtors.

Signed:_____Title:_____

Street:_____City:_____ State:_____ Zip:_____

Return this ballot on or before the date specified in the court order accompanying this Plan and Disclosure Statement to:

ROBERT J VANDEN BOS
**ATTN: INVEST N RETIRE, LLC**
**BALLOTS**
The Spalding Building, Suite 520
319 S.W. Washington Street
Portland, Oregon 97204-2620
Phone: (503) 241-4869
Fax: (503) 241-3731

**NOTICE: "THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MAY NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR'S SCHEDULES."**

## SPECIAL ELECTION CLASS 5

Any Class creditor may elect to be included in Class 5 which consists of those Creditors holding allowed general Unsecured Claims in amounts less than $1,000.

Please indicate below if you wish to be included within Class 5. (If nothing is marked, you will be within the class as defined in the Plan.)

_____        Yes, I want to be included in Class 5 and receive a
               on-time payment of 90% in full and final satisfaction
               of my Claim, not to exceed 90% of $1,000 ($900).

**NOTICE: "THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MAY NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR'S SCHEDULES."**

EXHIBIT 6 - Page 2 of 2                    -OVER-

Case 14-30772-tmb11    Doc 67    Filed 07/31/14